# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARK C. WOODY,**

                **Plaintiff,**

**vs.**                                  **Civ. No.  12-121 JCH/GBW**

**XCEL ENERGY,**

                **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant's Motion to Dismiss Complaint* [Doc. No. 10]. After considering the motion, response, and reply briefs, the Court concludes that motion should be granted in part and denied in part as further described herein.

## LEGAL STANDARD

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009); *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels

and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 674 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citation omitted). To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570; *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 665 (citing *Twombly*, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.2007). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting *Twombly*, 550 U.S. at 570).

## FACTS SET FORTH IN THE COMPLAINT

According to the Complaint [Doc. 1] filed by Plaintiff Mark C. Woody ("Woody"), he is

currently employed by Defendant Xcel Energy ("Xcel").[1]  *Id*. at ¶ 17.  In February of 1996, Woody began his employment with Xcel as a Lineman Apprentice.  *Id*. at ¶ 7.  He received generally positive evaluations, promotions, and merit pay raises.  *Id*. at ¶¶ 8-9.  In 2008, Woody notified Xcel that he had two disorders, Hashimoto Disease and anti-voltage-gated potassium channel antibody mediated cramp fasiculation syndrome, which cause muscle weakness and sensory neuropathy in his hands and feet.  *Id*. at ¶ 10.  Plaintiff alleges that these disabilities have limited his ability to climb poles and lift "heavy objects."  *Id*. at ¶ 11-12.  He does not allege a specific weight restriction for lifting.

On a date not specified in the Complaint, Woody asked to be excused from climbing poles as part of his job duties.  Later, in August of 2008, Xcel removed Woody from the apprentice training program.  *Id*. at ¶ 14.  Then, in January of 2009, Xcel terminated Woody's participation in the lineman apprentice program and told him that it had no work for him.  *Id.* at ¶ 14.  His manager told Woody that he was not terminated from the company, but he would have to apply for another position within Xcel.  *Id*. at ¶ 16.  The manager then called police to have Woody escorted off the Xcel premises.  *Id*.  For the next eleven months, Woody applied but was not hired for eight vacant positions with Xcel.  *Id*.  at ¶ 17. In December of 2009, Xcel rehired Woody as a Transmission Patrolman, a position that has no advancement or promotional opportunities.  *Id*.

Woody has asserted claims for discrimination on the basis of disability in violation of both the Americans With Disabilities Act ("ADA") (Count I) and the New Mexico Human Rights Act

---

[1] In its motion to dismiss, the Defendant assets that Woody incorrectly named it as Xcel Energy, when in fact it should be correctly identified as Southwestern Public Service Company. Because Defendant has not moved to substitute parties or otherwise amend the caption and because the case is before the Court on a motion to dismiss, the Court will use the terminology employed by Woody in his complaint.

("NMHRA") (Count II), as well as for retaliation in violation of Title VII and the New Mexico Human Rights Act (Count III).

## DISCUSSION

### I.    DISABILITY DISCRIMINATION (COUNTS I AND II)

The ADA provides in relevant part that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees, ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate " '(1) that [he] is disabled within the meaning of the ADA; (2) that [he] is qualified-with or without reasonable accommodation; and (3) that [he] was discriminated against because of [his] disability.' " *McKenzie v. Dovala*, 242 F.3d 967, 969 (10th Cir. 2001) (quoting *Aldrich v. Boeing Co.*, 146 F.3d 1265, 1269 (10th Cir. 1998)). The term "discriminate" includes the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless the employer demonstrates that such accommodations would impose an "undue hardship" on the operation of its business. 42 U.S.C. § 12112(b)(5)(A). The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Congress amended the ADA, effective January 1, 2009, by the ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110–325, 122 Stat. 3553, to expand the definition and construction of what constitutes a disability. *See* 42 U.S.C. § 12102(4)(A); *see also Carter v. Pathfinder Energy Servs.*, *Inc.*, 662 F.3d 1134, 1144 (10th Cir. 2011) (noting that "Congress amended the ADA in 2008 'to correct what it viewed as an overly restrictive interpretation of the statute's terms that had been

4

adopted by the Supreme Court' ") (quoting *Carmona v. Southwest Airlines Co.*, 604 F.3d 848, 855 (5th Cir. 2010))).  The term "substantially limits" was also broadened, particularly as set forth in EEOC Regulations issued in 2011.  *See* 29 C.F.R. § 1630.2(J)(4) (2012).

In its motion to dismiss under Rule 12(b)(6), Xcel argues that Woody's claims should be dismissed because he has failed to allege facts to show that he is disabled within the meaning of either the ADA or the NMHRA, or for those portions of his claim arising after January 1, 2009, under the ADAAA.  As grounds for its argument, Xcel contends that being limited in climbing and lifting heavy objects is not a "substantial limitation on major life activities," and therefore Woody cannot establish a cause of action for discrimination under those statutes.  In support, Xcel cites numerous cases in which courts concluded that restrictions on the ability to lift heavy objects does not constitute a substantial limitation on a person's ability to perform the life activity of lifting, and other cases in which courts held that climbing is not a major life activity.

A.    **Claims Prior to January 1, 2009**[2]

First, the Court will analyze whether Woody has stated a claim for discrimination prior to the amendments to the ADA that went into effect on January 1, 2009.[3]

------

[2] In its motion, Xcel separates Woody's claims into two categories: those occurring before the effective date of the ADAAA on January 1, 2009, and those occurring after that date. It is not entirely clear to the Court, either from the parties' briefs or from the Complaint, the exact nature of this division.  What is clear to the Court is that Woody alleges that Xcel terminated his employment some time in January of 2009, and that at least some of his claims probably accrued under the ADAAA.

[3] For purposes of reviewing claims of disability discrimination under the NMHRA, New Mexico courts apply the reasoning of decisions interpreting the ADA, despite slight differences in the terminology employed by the two statutes.  *See, e.g., Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 131 N.M. 607, 2002-NMSC-004, ¶ 8; *Ocana v. Am. Furniture Co.*, 135 N.M. 539, 2004-NMSC-018, ¶ 23.  Further, the Tenth Circuit has predicted that New Mexico courts would not apply the federal courts' interpretation of the ADAAA to claims arising under the NMHRA prior to January 1, 2009.  *Latham v. Board of Educ. of Albuquerque Public Schools*, 489 Fed. Appx.

While Xcel does not appear to dispute that Woody has a physical "impairment," it does challenge whether his impairment substantially limits one or more of Woody's major life activities. First, Xcel points out that in his complaint, Woody points to only two limitations: an inability to lift heavy objects and an inability to climb poles. The Court agrees with Xcel that, under the more restrictive interpretations of the ADA in effect prior to January 1, 2009, Woody's allegations fail to show that he is substantially limited in one or more major life activities.

The Tenth Circuit has found "lifting" to be a major life activity. *See, e.g., Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495-96 (10th Cir.2000). However, the Tenth Circuit and other courts have concluded that an inability to perform "heavy" lifting, such as the extremely vague limitation that Woody alleges in his Complaint, does not constitute a substantial limitation on lifting. For example, in *McCoy* the Tenth Circuit stated:

> Lifting has been held to be a major life activity. However, the 'inability to lift heavy objects does not constitute a substantial limitation on a person's overall ability to lift [as the] capacity to perform heavy lifting is not a trait shared by the majority of the population.' As the First Circuit noted: "strength varies widely throughout the population, and if a restriction on heavy lifting were considered a substantial limitation on a major life activity, then the ranks of the disabled would swell to include infants, the elderly, the weak, and the out-of-shape. Congress obviously did not mean to extend the protections of the ADA to every physical impairment that precluded the performance of some particularly difficult manual task."

*McCoy v. USF Dugan, Inc.*, 42 Fed. Appx. 295, 297-98 (10th Cir. July 3, 2002) (unpublished) (internal citations omitted) (quoting *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 21, 22-23 (1st Cir. 2002)). Similarly, in *Buettner v. N. Okla. Cnty Med. Ctr.*, 158 Fed. Appx. 81 (10th Cir.

---

239, 243-46 (10th Cir. July 12, 2012) (unpublished). In light of the foregoing, this Court draws no distinction between the claims arising under the two statutes, applying ADA standards to claims arising before January 1, 2009 under both statutes., and ADAAA standards to those arising after January 1, 2009.

6

Nov. 29, 2005) (unpublished), the Court held that a plaintiff's 20-pound lifting restriction was not substantially limiting on its face. *Id.* at 87 ("Limitations on the ability to engage in life activities, such as prolonged standing and lifting heavy objects, are part of the human condition, and unless an ADA plaintiff can show that his impairment reduces his capabilities significantly below those of the average person, he is not deemed 'disabled' under the Act."). Other decisions from both the Tenth Circuit and other Circuits are in accord. *See Rakity v. Dillon Cos. Inc.*, 302 F.3d 1152, 1160 (10th Cir. 2002) (noting precedents from other circuits that ten and twenty-pound lifting restrictions are not substantially limiting, citing *Pryor v. Trane Co.*, 138 F.3d 1024, 1025 n. 2 (5th Cir. 1998); *McKay v. Toyota Motor Mfg. U.S.A., Inc.*, 110 F.3d 369, 373 (6th Cir. 1997); and *Wooten v. Farmland Foods*, 58 F.3d 382, 384, 386 (8th Cir. 1995)); *see also Velarde v. Associated Regional and University Pathologists*, 61 Fed.Appx. 627, 629-30 (10th Cir. Apr. 2, 2003) (unpublished); *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1241 (10th Cir. 2001) (citing *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 540 (9th Cir. 1997) (twenty-five pound lifting restriction is not a substantial limitation on the ability to lift); *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996)) (same) (abrogated on other grounds by *Baird ex rel. v. Rose*, 192 F.3d 462 (4th Cir. 1999)). Based on the foregoing authorities, the Court concludes that Woody has failed to allege sufficient facts to support a claim that he is substantially impaired in the major life activity of lifting.

Next, the Court must determine whether climbing generally, or climbing poles specifically, is a major life activity, and if so, whether Woody alleges sufficient facts to support a claim that he is substantially impaired in that activity. Xcel cites *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 n. 2 (5th Cir. 1996), in which the court held that climbing is not a major life activity under the ADA. *See also Piascyk v. City of New Haven*, 64 F.Supp.2d 19, 26 (D. Conn. 1999) (running,

7

jumping, climbing stairs and ladders, and crawling not major life activities).  Similarly, in *Elstner v. Southwestern Bell Telephone Co.*, 659 F. Supp. 1328, 1343 (S.D. Tex.1987), the court concluded that while the employee's knee problem constituted an impairment, it did not substantially limit his major life activities in that it only limited his ability to work at jobs requiring pole climbing.  In his response, Woody does not attempt to distinguish these cases, nor does he contend  that climbing is a major life activity under the ADA.  Instead, he asserts that his inability to climb is not his only limitation, citing allegations and materials outside the confines of his Complaint.  This does not answer the question, however.  Based on the foregoing cases, as well as this Court's inability to locate any pre-2009 opinion finding pole climbing to be a major life activity, the Court concludes that Woody has not alleged that he is disabled in a major life activity.

Finally, Woody argues that he has other impairments not set forth in his complaint.  He attaches to his response a printout from the internet containing information about Hashimoto's disease, as well as his own affidavit.  In his affidavit, Woody states that his medical condition severely limits his ability to walk or stand for any long periods, that he tires easily, that he has limited his daily activities of walking and standing.  *See* Doc. 15-2.  These are new allegations not asserted in the complaint, and they are supported by matters outside the pleadings.  As a general rule, in deciding a Rule 12(b)(6) motion for failure to state a claim, a federal court may only consider facts alleged within the complaint.  *Miller v.  Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).  When evaluating a Rule 12(b)(6) motion to dismiss, a court may not consider information outside the complaint without converting the motion to one for summary judgment.  *See* Fed. R. Civ. P. 12(b); *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998)  (reversible error may occur where the district court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment).  Xcel has not similarly provided the Court with such

materials, and in addition it objects to conversion of its motion to one for summary judgment.  In this case, the Court exercises its discretion and declines to convert the motion to dismiss into a motion for summary judgment by considering matters outside the pleadings.

On the other hand, it appears from those materials that the nature and extent of Woody's impairment may be greater than what is set forth in his Complaint (though the Court expresses no definitive opinion on the question, as the factual record before it is insufficient).  Therefore, with the exception of his claim that Xcel discriminated against him because he is substantially limited in pole climbing, which is not a major life activity, the dismissal of Woody's pre-2009 claims should be without prejudice.  This is because it appears possible that he might be able to assert enough facts to state a legally cognizable claim of discrimination based on a substantial limitation on other major life activities, such as walking or standing.

**B.**     **Claims Arising After January 1, 2009**

This Court recently addressed a strikingly similar issue in *Rico v. Xcel Energy, Inc*., —F. Supp. 2d —, 2012 WL 4466631(D.N.M. Sept. 25, 2012) (Vazquez, J.), a case that applied the principles of the ADAAA to facts nearly identical to those presented here.  In *Rico*, the plaintiff had been employed for three years by Southwestern Public Service Company (ostensibly the correct defendant in this case) as an apprentice lineman when he suffered a work injury.  *Id*. at *1.  After undergoing back surgery, plaintiff's physician released him to work with "modest lifting restrictions and no utility pole climbing."  *Id*.  Thus, both his job and his physical limitations were very similar to Woody's.  The plaintiff requested a transfer to a job for which he was qualified and which required no heavy lifting or pole climbing, but his employer refused, instead terminating his employment and requiring him to apply for other jobs in the company.  *Id*.  Ultimately, the company rehired the plaintiff as a "substation electrician," though at a lower rate of pay and seniority than his

previous position.  *Id.*  Just as in this case, the defendant filed a motion to dismiss on the grounds that the plaintiff's limitations on heavy lifting and pole climbing are not, as a matter of law, substantial limitations of major life activities.  *Id.* at *2.

The Court in *Rico* determined that plaintiff had alleged enough to survive a motion to dismiss for failure to state a claim.  It pointed out that "[b]efore Congress amended the ADA in 2008, courts construed the Act strictly, finding that an individual was 'substantially limited' only if he had 'an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.'"  *Id.* at *3 (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 185 (2002)).  The *Rico* court further noted that "[w]ith the ADAAA, Congress explicitly lowered the standard for 'substantially limits,' noting that 'lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities.  Pub. L. No. 110–325, § 2(a)(6), 122 Stat. at 3553."  *Id.*  *Rico* went on to observe:

> The post-ADAAA regulations promulgated by the EEOC similarly caution that the term "substantially limits": is "not meant to be a demanding standard"; shall be construed broadly in favor of expansive coverage, to the "maximum extent permitted by the ADA"; and shall "be applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." 29 C.F.R. § 1630.2(j)(i), (iv). While noting that "not every impairment will constitute a disability within the meaning of [the ADA]," the regulations make clear that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(ii). Rather, the relevant inquiry is whether a disability "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* While this inquiry "usually will not require scientific, medical, or statistical analysis," such evidence may be presented in order "to make such a comparison where appropriate." 29 C.F.R. § 1630.2(j)(v).

*Rico*, 2012 WL 4466631 at *3.  The *Rico* court then goes on to cite various recent federal district court opinions in which courts have applied the ADAAA broadly to encompass disabilities that

previously might have been excluded under the un-revised ADA. *Id*. at *4. After analyzing the cases cited by Xcel—the same cases it cites in the case currently before this Court—the *Rico* court concluded that it would be imprudent to dismiss the claims at the Rule 12(b)(6) stage. *Id*. at *5.

The Court finds the *Rico* court's reasoning persuasive and its caution prudent. It is clear that the ADAAA has significantly changed the landscape of ADA law, and that limitations not previously found to be "substantial" now meet that threshold. Therefore, for the same reasons more fully set out in *Rico*, *id*. at *3-5, this Court also concludes that to the extent his claims arise after January of 2009, Woody has successfully alleged facts to support a claim that he is substantially limited in the major life activity of lifting.

However, this Court diverges from *Rico* on the issue of pole climbing. Like Woody, the plaintiff in *Rico* alleged that he was substantially limited in both heavy lifting and climbing poles. In analyzing whether he had alleged enough to survive a motion to dismiss, the *Rico* court discussed only the strength of his claim that he was substantially limited in the major life activity of lifting; it made no express determination as to whether pole climbing was a major life activity in the first instance. For the reasons previously set forth, this Court is convinced that climbing poles is not a major life activity, and thus the ADAAA's broader interpretation of "substantially limited"is not relevant. Thus, Woody may not assert that Xcel discriminated against him on the grounds that he is substantially limited in pole climbing. That portion of his claim will be dismissed with prejudice.

## II.      RETALIATION (COUNT III)

In order to support a claim for retaliation under the ADA, Woody must allege facts showing: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed

between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc*., 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2414-15 (2006)).

Here, Woody alleges that he asked Xcel to accommodate him by excusing him from climbing poles as part of his job duties as an apprentice lineman. Complaint at ¶ 13. He alleges that this request was reasonable because linemen rarely have to climb poles manually, and in the rare and unlikely event of a pole-top rescue, another lineman could handle the duties. *Id*. By requesting that accommodation, Woody was engaging in a protected act under the ADA sufficient to satisfy the first element of discrimination. Xcel does not argue otherwise. Instead, Xcel argues that all it did was deny Woody's requested accommodation, nothing more, and as such it cannot be deemed to have retaliated against him. Doc. 10 at p. 13. This argument is disingenuous. If Xcel had simply denied the accommodation, it would have continued to require Woody to climb poles when necessary to fulfill his duties as an apprentice lineman. That was not Xcel's chosen course of action. Instead, Woody alleges that Xcel terminated him from the lineman apprentice program, denied him the opportunity to transfer to alternative position, and failed to hire him for several vacant positions for which he was qualified. Complaint at ¶ 14-17, 28. These acts went far beyond denial of an accommodation to include complete severance of the employment relationship. It cannot be doubted that a reasonable employee would have found termination of employment "materially adverse," thereby satisfying the second element. Finally, Xcel does not dispute that Woody has alleged that Xcel terminated his employment as a direct result of his request for accommodation, thereby satisfying the third element of causation. Accordingly, the Court concludes that Woody has successfully alleged a claim for retaliation.

Xcel's motion to dismiss Woody's retaliation claim will be denied.

**IT IS THEREFORE ORDERED** that:

(1)    *Defendant's Motion to Dismiss Complaint* [Doc. No. 10] is **GRANTED IN PART** and **DENIED IN PART**;

(2)    Plaintiff's pre-2009 claims for discrimination on the basis of his disability  are **DISMISSED WITHOUT PREJUDICE**, with the exception of his claim for discrimination on the basis of his inability to climb poles, which is **DISMISSED WITH PREJUDICE**;

(3)    Plaintiff's post-2009 claim for discrimination on the basis of his inability to climb poles is **DISMISSED WITH PREJUDICE**; however, Plaintiff's post-2009 claim for discrimination based on his inability to lift heavy objects remains pending; and

(4)    Plaintiff's claim for retaliation remains pending.


_____
**UNITED STATES DISTRICT JUDGE**